The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Webb's Maintenance Piping, Inc, was a self-insured employer.
4. The parties submitted a pretrial agreement which is incorporated by reference.
5. The following documents were stipulated into evidence:
1. 47 pages of medical records and reports.
 2. Letter from Margaret Webb to Mary Bishop dated November 17, 1994.
 3. Transcript of a recorded statement taken November 15, 1994.
4. Form 22 dated May 25, 1995.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. As of July 1994 plaintiff, who was then 50 years old, had been employed by defendant-employer approximately 4 years. He was a working supervisor for the company which did mechanical piping work primarily for Abbott Laboratories. His duties included ordering materials, supervising his work crew and actually performing the labor necessary to complete the job. His average weekly wage was $706.87.
2. On July 19, 1994 plaintiff was at the shop after lunch and was going to go back to the plant. He got into his pickup truck and was closing the door when the phone at the shop began to ring. He tried to open the door so that he could rush back into the building but the latch did not fully release and he ended up slamming his shoulder against the door. At that point he noted a stinging sensation in his neck and shoulder blade area. He got the truck door open, answered the phone and resumed his work activities. However, he informed his coworkers later that afternoon that he thought he had pulled a muscle in his neck or shoulder.
3. Following the incident plaintiff continued working and assumed that he had simply pulled a muscle. Beginning approximately July 25 the symptoms worsened and on July 28, 1994 he woke up with such severe pain under his arm and around his shoulder blade that he thought he was having a heart attack. The nature of the pain was such that he did not relate it to the incident on July 19. He went to the emergency room where he was found not to be having heart problems, but the cause for his left periscapular pain was not determined. The emergency room physician prescribed medication for him.
4. On August 1, 1994, plaintiff called the office of Dr. Martinez, the neurosurgeon who had previously treated him for a lumbar disc problem, but Dr. Martinez could not see him until August 5, 1994.
5. At that time plaintiff was taken out of work and given medication. His symptoms persisted, however, so Dr. Martinez ordered an MRI. The test revealed a herniated disc at C5-6 with significant stenosis. In view of the neurologic findings, Dr. Martinez recommended that plaintiff undergo surgery. Consequently, on August 24, 1994, surgery was performed to decompress and fuse the interspace.
6. Dr. Martinez did not document plaintiff's condition when he was seen for a follow-up visit in September except that the notes reported soreness after he slipped and fell in the shower in late September. He did not return to work and was generally inactive during the weeks following his operation. On October 7, 1994 he was hospitalized for pneumonia and he remained in the hospital until his discharge on October 11, 1994. He was then quite sedentary as he recovered at home.
7. Plaintiff returned to Dr. Martinez on November 3, 1994 reporting some continuing arm pain. Dr. Martinez advised him that he would be allowed to return to work at light duty in December. Five days later plaintiff called the doctor's office and indicated that his left calf was swollen and tender. He was sent to the hospital where he had a venous compression ultrasound. The test was negative so he was sent home. However, his symptoms worsened and on November 13, 1994 when the ultrasound was repeated, it revealed extensive deep vein thrombosis. Consequently, he was admitted to the hospital for anticoagulant therapy.
8. Following his discharge from the hospital on November 19, 1994, plaintiff continued to experience pain and swelling in his left leg. Dr. Hood treated him with medication and support stockings. Since the symptoms persisted despite treatment, he apparently decided to get another opinion and went to Dr. Brezina who concurred with the treatment recommendations. When he saw her in May 1995, he was experiencing significant swelling and pain in the leg despite the medication. Dr. Brezina was concerned that his condition might be permanent but believed that it was too early to know.
9. Dr. Martinez continued to see plaintiff for his spinal problems, but in January 1995 plaintiff's complaints began to focus more on his low back and left leg pain rather than his neck and arm. Dr. Martinez ordered an MRI of the lumbar spine which he found to be equivocal. He concluded that plaintiff probably did not have another herniated lumbar disc and prescribed conservative treatment. In any event, the low back condition was not related to the incident in question.
10. In July 1995 plaintiff saw Dr. Neville on referral from his attorney. Dr. Neville merely expressed opinions regarding the causation of his problems and regarding his permanent partial disability. No treatment was prescribed.
11. On July 19, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer. The fact that he struck his shoulder against the truck door constituted an unusual occurrence which interrupted his regular work routine. It was also a specific traumatic incident of the work assigned. He sustained an injury to his cervical spine as a result of the incident.
12. The ruptured cervical disc for which Dr. Martinez treated plaintiff was a proximate result of his injury by accident of July 19, 1994. Furthermore, the pneumonia he contracted in October and the deep vein thrombosis he developed in November 1994 were postoperative complications of the neck surgery and therefore were also a natural and proximate result of his injury at work.
13. As a result of this injury by accident, plaintiff was unable to work from approximately August 6, 1994 through the date of hearing on May 23, 1995. However, his employer apparently paid him his salary through August 14, 1994. He remained unable to return to work as of the date of hearing before the Deputy Commissioner on May 23, 1995 and had not reached maximum medical improvement with respect to his post-phlebitic syndrome. Consequently, no finding is made regarding the extent of any permanent disability he may sustain as a result of the injury.
14. This claim was not defended without reasonable grounds.
* * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On July 19, 1994 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in that he sustained a back injury as the result of a specific traumatic incident of the work assigned. In addition, plaintiff's pneumonia and deep vein thrombosis were natural and proximate results of his work-related back injury and resulting surgery. N.C. Gen. Stat. § 97-2 (6).
2. Plaintiff is entitled to compensation at the rate of $466.00 per week for 40 and 2/7 weeks for the temporary total disability he sustained as a result of this injury by accident through May 23, 1995 and continuing thereafter for as long as he remains so disabled. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident. G.S. § 97-2(19); N.C. Gen. Stat. § 97-25.
4. In that the case was not defended without reasonable grounds, plaintiff is not entitled to have attorneys fees assessed against defendant. N.C. Gen. Stat. § 97-88.1.
5. Plaintiff is not entitled to a penalty for late payment of compensation in that the claim was denied and compensation did not become due prior to this decision. N.C. Gen. Stat. § 97-19.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay compensation to plaintiff for temporary total disability at the rate of $466.00 per week for 40 and 2/7 weeks through May 23, 1995 and continuing thereafter for as long as he remains so disabled. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorney's fee hereinafter approved.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of 25% of the compensation awarded is approved for plaintiff's counsel. He shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check. The fee contract providing for payment of one third of the recovery is specifically found to be unreasonable. Workers' compensation cases, unlike cases before the general courts, do not required detailed pleadings, comprehensive formal discovery, or lengthy jury trials. As required by N.C. Gen. Stat. § 97-80, procedures are as summary and as simple as they can reasonably be made.
4. Defendant shall pay the costs.
 S/ _______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _________________________ J. RANDOLPH WARD COMMISSIONER
S/ _________________________ COY VANCE COMMISSIONER
DCS:bjp